Hibson, J.
There being no dispute over the amount allowed as the reasonable value of the board, shelter and care furnished or the amount of the funeral expenses paid by the Home for plaintiff’s decedent, the sole problem before the court is to determine who is entitled to the property transferred and delivered to the Home by the plaintiff’s decedent. The answer to this problem is to be found from the fact that certain moneys and securities were delivered and transferred to the Home and from the admission agreement executed by plaintiff’s decedent in 1956. This agreement provides in pertinent part:
‘ ‘ In consideration of my being admitted as a patient to the care of, and to share the benefits of the Eliza Jennings Home, as such to continue until my death, withdrawal or expulsion for the reasons below, I agree:
C i * * #
“(b) That the terms of my admission and my right to continue to share the benefits of a patient shall be subject in all respects to the rules and regulations of said Home.
“ (c) That my right to continue as a patient and the obligation of the Rome to care for me, shall cease if:
“ 1. I shall be at any time adjudged insane by proper public authorities.
“2. The Board of Trustees shall find at its discretion that I can be better cared for by some other person or institution.
“3. The Board of Trustees shall find that I have failed to abide by the rules and regulations of the Home, or shall find that for any other cause or reason I am unfitted to continue as a resident of the Home or to be entitled to its care and benefits.
“ (d) That I will pay or cause to be paid to the Home at the time of my admission an admission fee * * *.
“(e) That I will forthwith give, transfer and convey to the said Home, by proper documents, all money and all property of every kind which I now own or may hereafter acquire; it being understood that so long as I live I shall have the use of the income of such money and property, and that at my death such money and property shall become the property of the Rome to use as the Board of Trustees may direct.
( ( Hi5 ^
“I further understand and agree that, if my application is *354 granted, I am to be admitted to the Home on probation for a period of not less than six months from date of admission; and that at any time during such six months period, the Home may, in its sole discretion, refuse to accept me as a patient if for any reason it shall deem my admission inadvisable. During such-probation period only, I am to have the right at my sole discretion to withdraw my application for admission, and in the event I withdraw during my probation period, the Home shall return to me all property which I have turned over to it, including fees, less a reasonable charge for my board, shelter, and care for the period during which I have lived in the Rome.” (Emphasis added.)
As far as pertinent to the case at hand, the rules and regulations of the Home, which were incorporated by reference in the admission agreement, are:
“A resident admitted to the Home will receive board, lodging and care during her life-time. However, the Home shall have the right, at any time within six months from the date of admission to terminate the residency of any person who does not meet its requirements.
ÍC * # *
“A Resident of the Home shall have the right at any time within six months from date of admission to terminate her residency by giving the Board of Trustees thirty days’ notice of her desire to do so. All money, securities and property, or their equivalent, held in the Resident’s Trust Fund for her benefit, in excess of the Admission Fee, shall be returned to her and thereupon the Home will be discharged of all further obligations. The Board of Trustees may, however, at its discretion charge a reasonable amount for board in lieu of retaining the Admission Fee, which amount will be deducted from the Admission Fee or other funds held for her benefit.” (Emphasis added.)
The admission agreement and the rules and regulations of the Home, which are incorporated by reference, were drawn by the Home. A careful examination of the relevant provisions, as quoted above, will reveal several conflicting provisions. Further, other provisions, which would appear to be relevant to such a contract, are absent. Specifically, there is no express *355 provision concerning disposition of the admission fee or the property held in the resident’s trust fund in the event a resident dies during the probationary period, which, although not entirely clear, appears to be the six-month period following the date of admission. Under such circumstances, the well-established rule that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it is applicable. 11 Ohio Jurisprudence (2d), 391, Contracts, Section 147; 17A Corpus Juris Secundum, 217, Contracts, Section 324.
The agreement entered into by the Home and the plaintiff’s decedent is divisible according to the length of the residence. There is an agreement in praesenti for temporary support, and a contract in futuro for permanent support which comes into existence only after the fulfillment of the condition precedent. Until the probationary period had passed each party reserved the right to determine whether to be bound by a lifetime contract. The passage of this six-month period is a condition precedent to the coming into existence of the permanent contract.
On the date of the decedent’s death, the agreement to furnish board, shelter and care during the remainder of decedent’s lifetime was subject to two conditions precedent, which had not been met. At that time, the decedent was not obligated to accept such care on the terms offered nor was the Home obligated to furnish such services. Only upon the completion of the probationary period would a permanent contractual relationship between the parties come into existence. Until the completion of the probationary period, the only contract in existence was that the resident would pay the reasonable value of the services rendered by the Home during her temporary period of residency.
The Home having prepared the admission agreement and having failed to make express provision for retaining the money paid and property transferred by plaintiff’s decedent as a permanent residency fee, it would be unreasonable to construe such contract as justifying the Home’s retention of the money and property, where decedent died during the period of her status as a probationary resident. We believe that a reasonable per *356 son in the position of the decedent at the time of the execution - of the admission agreement would have understood, in the absence of an express provision to the contrary, that unless and until she attained the status of a permanent (life) resident in the Home she, or her estate, would be entitled to a return of the money and property given for such right, less the reasonable value of the services rendered during the temporary period of her residence. This conforms with the view of the majority of jurisdictions that have considered this question. Such jurisdictions have held that a charitable home may not retain an applicant’s property on the ground that the death of the applicant has made it impossible to determine whether he would have become a permanent (life) resident at the end of the probationary period. Annotation, 10 A. L. R. (2d), 864, 875.

Judgment affirmed.

Taft, C. J., Zimmerman, Matthias, O’Neill, Griffith and Herbert, JJ., concur.